*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WAGNER/RICE, Minors.

UNPUBLISHED
April 11, 2019

No. 345728
Grand Traverse Circuit Court
Family Division
LC No. 17-004385-NA

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's orders terminating her parental rights to the minor children BW, MW, and LR[1] pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). On appeal, respondent-mother challenges the trial court's conclusions concerning statutory grounds and best interests. We affirm.

## I. BACKGROUND FACTS

In May 2017, Child Protective Services (CPS) began an investigation after respondent-mother's pit bull dog killed another dog belonging to respondent-mother's grandparents and then attacked the responding police officer, who was forced to shoot the dog. The Department of Health and Human Services (DHHS) filed a petition seeking removal of BW, MW, and LR from respondent-mother's care. DHHS's petition stemmed from allegations that respondent-mother did not have suitable housing, that the children were exposed to illegal drug use, and that respondent-mother required domestic violence, substance abuse, and mental health treatment. At the time of the petition, respondent-mother lived in the basement of her grandparent's home with her children and four pit bull dogs. DHHS alleged that respondent-mother's dogs were

---

[1] This case did not involve respondent-mother's minor child AW, and respondent-mother's parental rights to AW are not a subject of this appeal.

dangerous, she was unable to control the dogs, she did not appropriately train the dogs or keep them away from her young children, and she allowed the dogs to defecate in the house where the children were exposed to the feces. Additionally, there was evidence of human feces on the floors. A CPS worker observed the children walking through the dog and human feces.

The trial court placed BW with her father and placed MW and LR together in foster care. In June 2015, respondent-mother admitted to the trial court's jurisdiction over the children and stated that she was the victim of domestic violence and that her parenting and decision-making skills could be improved. The trial court ordered respondent-mother to undergo a substance abuse assessment and a psychological evaluation, and to participate in services related to parenting skills, substance abuse, emotional stability, and domestic relations.

At the outset, respondent-mother participated in a number of services provided through DHHS. She completed a substance abuse assessment, which determined that she did not require substance abuse treatment. The majority of the drug tests respondent-mother took during the pendency of this case were negative, although she tested positive for cocaine once and for THC twice. She underwent a psychological evaluation and she attended four sessions of individual therapy. She participated in parenting classes and attended parenting-time visits with the children. A CPS worker testified that respondent-mother made significant progress during her parenting-time visits and was "attentive to all of the children." Respondent-mother also gave away her dogs, made improvements to the house she was living in, and obtained employment.

In December 2017, however, respondent-mother moved to another part of the state. She stopped attending her individual counseling sessions and her parenting classes, and she did not seek substitute services despite a number of referrals from CPS for local service providers. She failed to complete services related to domestic violence, and there was evidence that she made contact with her ex-boyfriend. According to a CPS investigator, respondent-mother had unstable housing and seemed "to jump from house to house." Respondent-mother refused to provide her address to CPS workers and did not allow them to perform inspections of her living arrangements. Although she told the CPS investigator that she cleaned houses for a friend in exchange for cash, she did not obtain verifiable employment after her move. Respondent-mother was also arrested for having an expired driver's license, no proof of insurance, and being in possession of methamphetamine. She failed to appear at a hearing related to those charges, and a warrant was issued for her arrest. Additionally, she started dating someone who had a criminal history.

The last time respondent-mother saw BW was in December 2017, and the last time she saw MW and LR was in January 2018. Although respondent-mother kept in contact with MW and LR's foster parents for a short period of time, the last time that they heard from respondent-mother was in late July or early August 2018. In the summer of 2018, respondent-mother gave birth to AW, who was immediately removed from her care. Respondent-mother did not appear for any hearings related to this case after January 2018, including the termination trial. In May 2018, DHHS filed a petition to terminate respondent-mother's parental rights. Following evidentiary hearings in September 2018, the trial court entered an order terminating respondent-mother's parental rights to BW, MW, and LR. This appeal followed.

## II. STANDARD OF REVIEW

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest under MCL 712A.19b(5)." *In re Olive/Metts Minors*, 297 Mich App. 35, 40-41; 823 NW2d 144 (2012) (quotation marks and citation omitted). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted).

## III. STATUTORY GROUNDS

Respondent-mother argues that the trial court erred by finding that there was clear and convincing evidence to establish the statutory grounds for termination. We disagree.

The trial court may terminate a parent's parental rights if it finds by clear and convincing evidence that one or more of the statutory grounds for termination have been met. MCL 712A.19b(3). "Only one statutory ground for termination need be established." *In re Olive/Metts Minors*, 297 Mich App at 41.

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . :

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

"This statutory ground exists when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks, ellipsis, and citation omitted). We have concluded that there is sufficient evidence to terminate a parent's rights under MCL 712A.19b(3)(c)(*i*) when the parent failed to comply with the parent/agency agreement, did not provide adequate housing for herself and her child, missed half of her scheduled parenting-time visits, and did not participate in recommended mental health or substance abuse counseling. *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001).

In this case, more than 182 days had elapsed since the trial court entered the initial dispositional order in October 2017. The conditions that led to the adjudication were respondent-mother's failure to comply with court-ordered domestic violence treatment, her failure to demonstrate improved decision-making skills, her lack of suitable housing due to the condition of her home, and the children's exposure to illicit drug use. Additionally, the trial court ordered respondent-mother to undergo a substance abuse assessment and a psychological evaluation.

In December 2017, respondent-mother completed a substance abuse assessment, which indicated that she did not require substance abuse treatment. However, prior to undergoing the assessment, respondent-mother tested positive for cocaine once and for THC twice. In addition, respondent-mother did not participate in any random drug screens after she was arrested for possession of methamphetamine. Respondent-mother also completed a psychological evaluation and was diagnosed with generalized anxiety disorder and depression. While respondent-mother initially participated in therapy, she stopped attending sessions altogether in December 2017. Respondent-mother did not participate in any services related to domestic violence.

At the time that DHHS removed the children from respondent-mother's care, her living conditions were unsuitable because respondent-mother had dangerous dogs that she was unable to control and because the children were exposed to human and animal feces in the home. Respondent-mother gave away her dogs and made some "improvements" to the house, including removing the carpet, before she moved out in December 2017. However, respondent-mother did not maintain stable housing after that time, and she moved between Nashville, Bellevue, and Olivet, Michigan. She declined to provide CPS with specific addresses and she did not allow CPS to visit the places where she lived.

With respect to respondent-mother's decision-making skills, she left the county where she was receiving mental health treatment and other services, and she declined to seek substitute services despite CPS's referrals to local service providers. During this case, respondent-mother was arrested and charged with several crimes, including possession of methamphetamine. She failed to appear for court hearings related to those charges, which resulted in the court issuing a warrant for her arrest. Respondent-mother also stopped attending hearings in this case and she did not attend the termination trial. Further, respondent-mother stopped participating in parenting-time visits with her children and the last time that she saw her children was eight to nine months before the termination trial. While she continued to contact MW and LR's foster parents about the children for a period of time, at the time of the termination hearing, they had not heard from her for approximately two months.

Respondent-mother never obtained suitable housing during the pendency of this case, and she continued to make poor decisions, as evidenced by her moving away from the county in which she was receiving services, failing to follow through with services, and failing to maintain any contact with her children. Accordingly, there was clear and convincing evidence that the conditions that led to the adjudication continued to exist.

MCL 712A.19b(3)(g) provides that termination of a parent's rights is appropriate where "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." The trial court may terminate a parent's rights pursuant to MCL 712A.19b(3)(j) where "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. A parent's failure to comply with his or her service plan is likewise evidence of a reasonable likelihood of harm to the child if returned to the parent. *Id.* at 711.

This Court has found there was clear and convincing evidence to establish grounds for termination under MCL 712A.19b(3)(g) where a parent failed to obtain suitable housing throughout the pendency of the case, "failed to attend the majority of her court hearings, parenting classes, weekly therapy sessions, and parenting time visits," and lived across the state from her children and did not have contact with them. *In re Laster*, 303 Mich App 485, 494; 845 NW2d 540 (2013). In *In re Laster*, there was clear and convincing evidence of a reasonable likelihood of harm to the children if returned to the parent because the parent "failed to maintain employment and obtain suitable housing" and often lived "with others" during the pendency of the case. *Id.* The parent's "history of inviting men with criminal backgrounds into her home" was also evidence of a reasonable likelihood of harm to the children if returned to the parent's home. *In re White*, 303 Mich App at 712.

Here, as in *In re Laster*, respondent-mother stopped participating in all services months before the termination hearing. Moreover, she had not seen her children for approximately eight to nine months before the termination hearing, which she failed to attend. In fact, she failed to appear for any hearings related to the case after January 11, 2018. She did not attend any parenting classes, counseling sessions, or parenting-time visits after January 2018. She did not participate in any domestic violence counseling, she failed to secure suitable housing, and she refused to provide her address to CPS workers or allow them to inspect her living arrangements. She also had an outstanding warrant for her arrest stemming from a charge of possession of methamphetamine.

Respondent-mother failed to participate in and benefit from her service plan; thus, there was clear and convincing evidence that she was not able to provide proper care and custody. See *In re White*, 303 Mich App at 710; *In re Laster*, 303 Mich App at 493. Her lack of engagement in any aspect of this termination case after January 2018 demonstrated that there was no reasonable expectation that she would be able to provide proper care and custody within a reasonable time considering the children's ages. Likewise, her failure to obtain employment, her inability to maintain suitable housing, and her decision to date someone with a criminal history was evidence that there was a reasonable likelihood of harm to the children if they were returned to respondent-mother's care. See *In re White*, 303 Mich App at 711, 712; *In re Laster*, 303 Mich App at 493-494. Therefore, the trial court did not err by determining that clear and convincing evidence established grounds to terminate respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## IV. BEST INTERESTS

Respondent-mother argues the trial court erred when it concluded that termination of her parental rights was in the best interests of the children. We disagree.

The trial court should weigh all evidence in determining the children's best interests. *In re White*, 303 Mich App at 713. To make this determination, the trial court should consider a number of factors, including, "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id.* (quotation marks and citation omitted). In addition, the trial court may "consider a parent's history of domestic violence, the parent's compliance with his or her case

service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Respondent-mother argues that the trial court erred by concluding that the children were not bonded to respondent-mother. According to a CPS worker, the children appeared "to be very excited to see" respondent-mother during their parenting-time visits and they were "obviously" bonded and attached to her. There was also evidence that respondent-mother was intellectually and emotionally capable of parenting successfully.

Nevertheless, respondent-mother had not seen any of the children in at least eight months, and MW and LR's foster parents had not heard from her in the two months before the termination. Respondent-mother did not comply with her service plan and stopped participating in all services more than six months before the termination trial. According to CPS workers, respondent-mother had a history of domestic violence and, although she was required to do so, she did not participate in any services related to domestic violence. Respondent-mother did not appear at the termination trial and her counsel did not present any evidence of her current employment, living situation, or ability to care for her children.

BW was placed with her father, and a CPS worker stated that she was "doing very well there" and was participating in play therapy. There was also testimony that MW and LR were doing "very well" in their foster placement and their needs were "being met and more." The trial court did not clearly err. The children were doing well in their respective placements and there was no evidence of respondent-mother's present ability or desire to care for her children.

## V. CONCLUSION

The trial court did not clearly err by concluding that there was clear and convincing evidence to establish grounds for termination under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that a preponderance of the evidence demonstrated that it was in the children's best interests to terminate respondent-mother's parental rights.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

-6-